**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

DEBRA DUMMITT MEYERS AND                              CIVIL ACTION
RONALD PALMERO

VERSUS                                                NO. 15-292

A.W. CHESTERTON, ET AL.                               SECTION "L"

<u>**ORDER AND REASONS**</u>

Before the Court is Plaintiffs' motion to remand to state court.[1] (Rec. Doc. 39). Having

considered the parties' briefs and the applicable law, the Court now issues this order.

**I.      BACKGROUND**

As Plaintiffs Debra Meyers and Ronald Palermo ("Plaintiffs") allege, they are the adult

children of Ronald Dummitt ("Mr. Dummitt"), who died of malignant mesothelioma. From 1960

to 1988, Mr. Dummitt worked as a boiler technician for the U.S. Navy. He served aboard various

naval vessels. Plaintiffs allege that Mr. Dummitt was exposed to asbestos at various facilities

during his work. Plaintiffs further allege that Mr. Dummitt was exposed to asbestos at various

shipyards while his naval vessels were being repaired, maintained, or refitted. Plaintiffs allege

that this exposure caused Mr. Dummitt's malignant mesothelioma, resulting in his death.

Plaintiffs filed suit in Louisiana state court seeking damages from a number of

Defendants, who allegedly were miners, manufacturers, sellers, users, distributors and/or

suppliers of asbestos products and whose actions or omissions caused Mr. Dummitt's exposure.

Thereafter, Plaintiffs moved to amend their complaint, seeking to disclaim any cause of action

for recovery for wrongful acts that were required by or committed at the direction of a federal

_____

[1] As the motion to remand involves the issue of this Court's jurisdiction over the case, the Court will rule
on the motion to remand before addressing any other pending motion in this case.

officer. Later that same day, before the state court ruled on the motion to amend, Defendant GE ("GE"), joined by other Defendants, removed the case to this Court under the Federal Officer Removal Statute. Defendants asserted that their actions were compelled by federal officers – that is, Navy officials. The next day – after removal – the state court issued an untimely order to grant the motion to amend. Plaintiffs filed a similar motion for leave to amend in this Court, which was granted. Plaintiffs thus filed in this Court a First Amended Complaint with the disclaimer. Plaintiffs note that they agree to be bound by this disclaimer.

Plaintiffs' suit seeks wrongful death damages against Defendants under article 2315.2 of the Louisiana Civil Code. Plaintiffs assert, *inter alia*, claims of strict liability, design defect, and failure to warn, subject to their asserted disclaimer.

## II.   PRESENT MOTIONS

### A.   Plaintiffs' motion to remand

Plaintiffs now move to remand to state court. (Rec. Doc. 39). As an initial matter, Plaintiffs argue that the removing Defendants bear the burden to prove entitlement to federal-officer removal and that all doubts or ambiguities are construed against federal jurisdiction and in favor of remand, particular where the Defendants are private contractors. Specifically, Plaintiffs assert two reasons for remand. First, they argue that they have specifically disclaimed any claim against Defendants with regard to design-defect or strict-liability where Defendants' actions were compelled by federal officers. They note that as Plaintiffs, they are the master of their complaint and that their complaint expressly disclaims the purported causes of action that serve as the basis of Defendants' removal. Second, Plaintiffs argue that Defendants cannot remove on failure to warn because Defendants cannot demonstrate that their failure to warn was compelled by federal officers. Plaintiffs assert that the evidence presented by Defendants, regardless if it shows that the Navy exercised some degree of control of equipment labels and

warnings, does not demonstrate that the Navy prevented Defendants from complying with their duties to warn under state law. Rather, Plaintiffs argue, evidence shows that the Navy actually required such warnings. Thus, Plaintiffs argue, Defendants cannot show a causal nexus or a colorable federal contractor defense.

Defendants oppose. Defendants argue that Plaintiffs' disclaimer is ineffective because the disclaimer was not in the petition at the time of removal, the time period when subject matter jurisdiction is assessed. They also argue that the disclaimer is ineffective because it cannot be enforced as a binding disclaimer and effectively would force resolution of the government contractor defense in state court. Additionally, Defendants argue that the government contractor defense should be assessed on the merits at the appropriate time in federal court, noting that it essentially is the heart of the case. Defendants emphasize that they only need to assert a "colorable," not an "airtight," defense to establish federal jurisdiction. Defendants argue that the evidence establishes the government's tight control over warnings.

Plaintiffs reply, by leave of Court. (Rec. Doc. 79). They affirm that there are only two remaining claims: (1) failure to warn; and (2) negligence claims against the Shipyard Defendants for failure to provide Mr. Dummitt with a safe place to work. They state that the amended complaint was verified and signed, thus Plaintiffs are bound by the disclaimer. They note that if, hypothetically, they tried to re-assert these disclaimed causes of action, Defendants could remove to federal court again. Plaintiffs also explained that they would file a motion to dismiss, with prejudice, those disclaimed causes of action upon return to state court.

III.    DISCUSSION

   A.    Remand

   In general, a federal law defense to a state law claim is insufficient to confer federal

subject matter jurisdiction for the purposes of removal; however, the Federal Officer Removal

Statute provides an exception. 28 U.S.C. §1442(a)(1); *Hampton v. Owens-Illinois*, 06-10929,

2007 WL 274974, *1 (E.D. La. Jan. 29, 2007) (Africk, J.). The Federal Officer Removal Statute

permits the removal of a civil action brought in state court against the United States or an agency

or officer of the United States. *See* 28 U.S.C. §1442(a)(1). Historically, the purpose of the

Federal Officer Removal Statute was to

>   ensure a federal forum in any case where a federal official is entitled to raise a
>   defense arising out of his official duties. The act of removal permits a trial upon
>   the merits of the state-law question free from local interests or prejudice. It also
>   enables the defendant to have the validity of his immunity defense adjudicated, in
>   a federal forum. . . . At the same time, the invocation of removal jurisdiction by a
>   federal officer does not revise or alter the underlying law to be applied. In this
>   respect, it is a purely derivative form of jurisdiction, neither enlarging nor
>   contracting the rights of the parties. Federal involvement is necessary in order to
>   insure a federal forum, but it is limited to assuring that an impartial setting is
>   provided in which the federal defense of immunity can be considered . . .

*Arizona v. Manypenny*, 451 U.S. 232, 241 (1981) (internal citations omitted).

   A private government contractor can invoke the Federal Officer Removal Statute

provided that 1) the contractor is a "person" within the meaning of the statute, 2) the contractor

acted pursuant to a federal officer's directions when committing the acts that allegedly give rise

to the injury at issue (the "causal nexus prong"); and 3) the contractor can assert a colorable

defense (the "colorable defense prong"). *Id.* at 397 (citing *Mesa v. California*, 489 U.S. 121

(1989)).

   Generally, in the context of a motion to remand, Defendants have the burden to

demonstrate federal jurisdiction. *Winters v. Diamond Shamrock Chemcial Co.*, 149 F.3d 387,

4

397 (5th Cir. 1998). Any ambiguity is generally construed against removal, in favor of remand. *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979). Even so, the Federal Officer Removal Statute is to be liberally construed. *Winters*, 149 F.3d at 398.

### 1.     Disclaimer of strict-liability and design-defect claims

The Court must first determine whether Plaintiffs' disclaimer of their previously pled strict-liability and design-defect claims renders ineffective Defendants' attempt to remove on the basis of those claims. Several courts have addressed similar disclaimers in the context of asbestos cases removed under the Federal Officer Removal Statute. In a similar case in this District, the court in *Sheppard v. Northrop Grumman Systems Corp.*, 07-2208, 2007 WL 1550992, at *7 (E.D. La. May 24, 2007) (Barbier, J.), remanded to state court where the plaintiffs asserted such a disclaimer. In *Sheppard*, the plaintiffs sought leave to amend for the purposes of disclaimer both prior to removal in their state court pleadings, and subsequent to removal in their federal pleadings. *Id.* The disclaimer deleted from the pleadings all strict-liability and design-defect claims. *Id.* The court in *Sheppard* gave effect to the waiver and explained that without the strict liability claims, the only remaining asbestos claims were those based on negligence, which the precedent indicated should be remanded. *Id.* The court in *Sheppard* emphasized that the plaintiffs sought disclaimers in both federal and state court and that even if plaintiffs were to later attempt to revive their strict-liability claims in state court, the defendant could always again file for removal under the Federal Officer Removal Statute. *Id.* (citing *Overly v. Raybestos-Manhattan*, 96-2853, 1996 WL 532150 (N.D. Cal. Sept. 9, 1996); *Westbrook v. Asbestos Defendants*, 01-1661, 2001 WL 902642 (N.D. Cal. July 31, 2001)).

The Court's reasoning in *Sheppard*, based on strikingly similar facts, applies with equal force here. It is well-settled law that the Plaintiffs are the masters of their own complaint. Like in

*Sheppard*, Plaintiffs here sought for leave to amend both (1) in state court prior to removal and

(2) in federal court post-removal. They were granted leave. Plaintiffs' disclaimer reads:

> [Plaintiffs] disclaim (and agree to be bound by such disclaimer) any cause of
> action against any Defendant for recovery for any injuries or damage caused by
> exposure to asbestos that is based on any of the acts or omissions [that] were
> required by and/or committed at the direction of any officer of the United States.

In their briefs, Plaintiffs further emphasize the binding nature of the disclaimer: in

addition to the text of the disclaimer in the amended complaints, the pleadings have been signed

and verified by Ms. Meyers herself. Plaintiffs' briefing also emphasizes the full extent of the

disclaimer regarding the strict-liability and design-defect claims:

> [T]he plaintiffs reaffirm here that they disclaim and *do not seek recovery on a
> strict-liability or design-defect theory against any defendant*. The plaintiffs also
> reaffirm that the only remaining claims for which they seek recovery are (1)
> failure-to-warn claims and (2) negligence claims against the shipyard defendants
> for failure to provide plaintiffs' decedent with a safe place to work . . . . [T]he
> plaintiffs pledge to file a motion to dismiss their disclaimed claims, with
> prejudice, in the state court if the case is remanded. (Rec. Doc. 79 at 5-7)
> (emphasis added) (citations omitted).

Because the disclaimer clearly states its binding nature, is verified, and plainly abandons

all strict-liability and design-defect claims, the disclaimer is effective. This binding nature of the

disclaimer makes remand even more appropriate here than in *Sheppard*, where there is no

evidence of verification. *Compare Sheppard*, 2007 WL 1550992, *with Legendre v. Anco

Insulators*, 12-94, 2012 WL 2064537, at *4 (M.D. La. May 14, 2012) (explaining that the

plaintiffs neither signed nor verified their amended complaint, which indicated the nonbinding

nature of the disclaimer therein). Moreover, Plaintiffs have stated on the record that they will file

a motion to dismiss their disclaimed claims once back in state court. The Court will hold

Plaintiffs, and their counsel as officers of the court, to this guarantee made to the Court.

Plaintiffs' claims no longer include those of strict liability and design defect, but rather solely

consist of failure to warn and negligence. Moreover, the Court gives credence to the reasoning of the courts in *Sheppard* and *Westbrook*: in the event that Plaintiffs were later to attempt to resurrect their disclaimed strict-liability and design-defect in state court, Defendants could simply again remove under the Federal Officer Removal Statute.

Although Defendants argue that Plaintiffs' disclaimer is ineffective because it was not in the petition at the time of removal, this argument is not convincing. The *Sheppard* court rejected a similar argument. Just as in *Sheppard*, Plaintiffs here sought to add the disclaimer in state court *prior* to removal, as well as later in federal court. All parties, therefore, were on notice *at the time of removal* that Plaintiffs were asserting the disclaimer of the strict-liability and design-defect causes of action. Effectively, then, at the time of removal, the complaint must be read as incorporating the disclaimer. [2] Indeed, Plaintiffs are the master of their own complaint. As explained herein, Defendants cannot ignore the disclaimer here when asserting a jurisdictional basis for removal.

Therefore, Defendants cannot remove based on Plaintiffs' disclaimed strict-liability and design-defect claims.

### 2.    Failure to Warn

The Court next must determine whether Defendants have shown that the Federal Officer Removal Statute entitles them to remove based on Plaintiffs' state law failure to warn claims. Plaintiffs argue that Defendants cannot establish the "causal nexus prong" of Federal Officer Removal Statute. As the Court has explained, to meet the causal nexus prong, the Defendants must show that they acted pursuant to a federal officer's directions when committing the acts that allegedly give rise to the injury at issue. The federal oversight of the contractor must be "direct

---

[2] Some courts, in fact, have remanded even where similar disclaimers were only filed *after* removal. *See Overly*, 1996 WL 532150; *Westbrook*, 2001 WL 902642.

and detailed," indicating a "high degree of government oversight." *See Creighton v. Fleetwood Enterprises, Inc*., 07-7194, 2009 WL 1229793, at *3 (E.D. La. May 5, 2009) (Vance, J.). A number of courts in this District have analyzed the nexus prong of the Federal Officer Removal Statute in the context of asbestos failure to warn causes of action. As this Court explained in *Cole v. Northrop Grumman Ship Sys., Inc*., 07-3049, 2008 WL 2651428, at *4 (E.D. La. July 7, 2008) (Fallon, J.), the courts in this District have established that in this context, the causal nexus prong requires a showing of direct government control over warnings, such that the government's "direction and control directly interfered with the defendant's ability to fulfill its state law obligation to warn employees of safety hazards." *Cole*, 2008 WL 2651428, at *4. Although the Defendants argue for a more relaxed standard for the causal nexus prong, *Cole* plainly explains the proper standard:

> [A] line of factually-similar cases decided in this District and one from California [have] held that the removing defendant could not prove that the federal government restricted the defendant's ability to warn the plaintiff(s) of asbestos' dangers. *See Gauthe v. Asbestos Corp.,* 1997 WL 3255 (E.D.La.1997); *Porche v. Flexitalic, Inc.,* 1996 WL 603919 (E.D.La.1996); *Savoie v. Northrop Grumman,* No. 05-2086 (E.D.La.2005); *Mouton v. Flexitalic, Inc.,* 1999 WL 225438 (E.D.La.4/19/99); *Guidroz v. Anchor Packing,* No. 98-3709 (E.D.La .1999); and *Overly v. Raybestos-Manhattan,* 1996 WL 532150 (N.D.Ca.1996). These cases held that, in the context of failure to warn, the government, at a minimum, had to provide some level of direct control over warnings and the defendant failed to establish that this was the case. *This in turn negated the existence of a causal nexus because the defendant could not show that the government's direction and control of activities directly interfered with the defendant's ability to fulfill its state law obligation to warn employees of safety hazards*. *See Maryland v. Soper,* 270 U.S. 9, 22, 46 S.Ct. 185, 70 L.Ed. 449 (1926) ("There must be come causal connection between what the officer has done under asserted federal authority and the state prosecution. It must appear that the [state] prosecution has arisen out of the acts done by the officer under color of federal authority and in enforcement of federal law."). *Cole*, 2008 WL 2651428, at *4 (emphasis added) (footnotes omitted).

In *Gauthe*, for example, the Court remanded to state court, noting that "there is no evidence that the Government restricted or prohibited Avondale's ability to notify individuals of

8

the presence of asbestos in the work environment. Assuming that Avondale built ships under the direct supervision of the federal government, nothing about that supervision prevented Avondale from warning Mr. Gauthe about the dangers." *Gauthe*, 1997 WL 3255, at *3 (Duval, J.). The Court in *Gauthe* rejected the defendant's argument that the contractor's compliance with the requirements of the government contract sufficed to establish the nexus requirement. Rather, the *Gauthe* court required more than just some degree of government control over warnings to establish the nexus prong. Even where the government closely supervises the government contract, that close supervision is not alone sufficient for a finding that the causal nexus requirement is met. *See Creighton*, 2009 WL 1229793, at *3-4.

The extent of federal authority here over the defendants is substantially similar to that in *Gauthe*, particularly considering that Plaintiffs are not pursuing the strict liability/design defect claims, as discussed above. Here, the parties substantially agree about the factual extent of that control. The Navy exercised some degree of control over labeling and packaging. The Navy oversaw the building specifications. The Navy was charged with determining whether warnings were appropriate. However, just as in *Gauthe*, this evidence does not show the Navy *prohibited* the defendants from providing asbestos warnings. There is some factual dispute over whether the Navy *would have* prohibited an asbestos warning. Some of the Defendant's evidence, including that of Dr. Lawrence Betts, indicates that the Navy would have prohibited such a warning. Plaintiffs counter with other testimony of Dr. Betts, in which he acknowledged that he did not have any knowledge of the Navy having prohibited such warnings and that he could not be sure whether the Navy would have prohibited a warning. (Rec. Doc. 39 at 13: "I can't really tell you what the Navy didn't want."). This evidence is speculative, at best, as to the Navy's prohibition of asbestos warnings. Although Defendants assert that the Navy *would have* prohibited warnings,

9

it had not demonstrated that the Navy *actually did* prohibit warnings.[3] Stated differently, nothing about the Navy's oversight prevented the Defendants from complying with any state law duty to warn. Thus, there is no conflict between federal policy and state law. *See Kestetter v. Pacific Scientific Co.*, 210 F.3d 431, 438 (5th Cir. 2000) (explaining that a central purpose of the Federal Officer Removal Statute is to protect against a conflict between state law and federal law). Therefore, Defendants have not met their burden to show that a federal officer prohibited them from complying with their duty to warn under state tort law.

The Defendants focus the remainder of their arguments on explaining how they have a colorable federal defense. They cite *Cole*, for example, for the proposition that here the degree of government control establishes a colorable federal defense. They also cite the Supreme Court's decision in *Jefferson Cnty*, 527 U.S. 423, 432 (1999), to show that they only need a "colorable," not an "airtight" government contractor defense. The citations of these cases, however, are incomplete. Although Defendants' assertion is correct that they only need to assert a "colorable" defense regarding the third *Mesa* prong, the Defendants are conflating *Mesa's* colorable defense prong and the causal nexus prong. While the two prongs are closely related, they are distinct. Regardless of whether the Defendants can establish the colorable defense prong, they must also establish the causal nexus prong. The Defendants fail to meet this burden. Thus, they cannot remove based on Plaintiffs' failure to warn claims.

---

[3] The speculative nature of this evidence also undermines Defendants' citations of *Kestetter v. Pacific Scientific Co.*, 210 F.3d 431, 438 (5th Cir. 2000). *Kestetter* must be viewed in context. As *Kestetter* explained regarding the government contractor defense in a plane products liability case, "[s]tate law is displaced if (1) the United States exercised discretion and approved the warnings; (2) the contractor provided a warning that conformed to the approved warnings; and (3) contractor warned about dangers it knew, but the government did not." *Id.* Unlike the situation analyzed in *Kestetter*, where the contractor *provided* warnings pursuant to government instruction, here the issue is whether the government *prohibited* warnings. As the Court has explained, the evidence is speculative as to whether the government prohibited asbestos warnings. The Defendants thus fail to meet their burden.

## IV.      CONCLUSION

For the foregoing reasons, Defendants have not demonstrated a proper basis to remove

under the Federal Officer Removal Statute. Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to remand is **GRANTED**.

New Orleans, Louisiana, this 20th day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE